The plaintiff and the defendant corporations were created by and organized respectively under the statutes (Private Acts 1860-'61, ch. 107; Private Acts 1883, ch. 41), of this State. "The Baltimore Gold and Silver Mining and Smelting Company, of Baltimore City," mentioned in the pleadings in important connections, is a corporation created by and organized under the laws of the State of Maryland, and has the same corporate name as the defendant corporation, omitting the words "of Baltimore City."
This action is brought to have declared void, for fraud, a deed (447) of trust executed on 27 April, 1882, by the plaintiff through the contrivance and fraudulent conduct of its principal officers and agents, and the like of the principal officers and agents of the said "The Baltimore Gold and Silver Mining and Smelting Company of Baltimore City," to the defendant trustees, to secure a large debt therein mentioned as due to the last mentioned corporation, and which debt and the security therefor the last named corporation sold and assigned to the defendant corporation, the latter having knowledge of the fraud alleged and the plaintiff's right in respect thereto; and likewise, to recover $75,000, the balance of the proceeds of the sale of sixty thousand shares of the capital stock of the plaintiff, which it is alleged the said "The Baltimore Gold and Silver Mining and Smelting Company, of Baltimore City," through the like contrivance and for and of its principal officers and agents and the same of the officers and agents of the plaintiff, got possession of, and sold for $90,000. It is contended for the plaintiff, that it is entitled to the relief demanded as to the deed of trust mentioned, against the defendant corporation and the defendant trustees of said deed, upon the ground that the said "The Baltimore Gold and Silver Mining and Smelting Company, of Baltimore City," for whose benefit this deed was made, sold and assigned its debt mentioned in the deed, and all its right and interest in the latter, to the defendant corporation, with notice of the plaintiff's right as to the alleged debt, and the deed, and likewise to recover the money mentioned, because the deed of assignment conveyed to the defendant corporation the same and all its *Page 356 
property, both real and personal, of every kind and nature whatever, with like notice of the plaintiff's right in respect thereto. And it is further contended, that the defendant corporation, in this deed of assignment (448) assumed liability to the plaintiff in the several respects mentioned, and covenanted to and with the said "The Baltimore Gold and Silver Mining and Smelting Company of Baltimore City," to discharge the liability of the latter to the plaintiff. So much of this deed of assignment as need be set forth here is as follows:
"This deed, made this 19th day of June, in the year eighteen hundred and eighty-three, between "The Baltimore Gold and Silver Mining and Smelting Company, of Baltimore City,' a corporation incorporated under the laws of Maryland, of the first part, and `The Baltimore Gold and Silver Mining and Smelting Company,' a corporation duly incorporated by the General Assembly of North Carolina, by an act entitled, `An act to incorporate the Baltimore Gold and Silver Mining and Smelting Company,' ratified 21 February, A.D. 1883, of the second part: Whereas, the party hereto of the first part, at a general meeting of its stockholders, held in the city of Baltimore, on 31 May, 1883, agreed to transfer and convey to the party hereto of the second part, all its property,affairs, rights, credits and business: Provided, that, in consideration thereof, the six hundred thousand shares of the capital stock of the said party of the first part shall be held and taken as if issued by the value of five dollars a share, a share full paid, that all the proceedings held and done, by the party hereto of the first part, shall be held and taken as if done under the charter of the said party of the second part, and in this assumption by the said party of the second part of all its debts and obligations and liabilities of the said party hereto of the first part, so that the party hereto of the second part shall succeed to all its interests and purposes, to the affairs, rights, obligations, interests and business of said party hereto of the first part: Now, therefore, in consideration of the premises and of the sum of five dollars, etc.,. . . . the party hereto of the first part, hath granted, bargained, and sold, (449) aliened and enfeoffed, released and confirmed, and by these presents doth grant, etc.,. . . . to the party hereto of the second part, its successors and assigns, etc. (sundry tracts of land described), andall the property, affairs, rights, credits, chattels, interests andbusiness, wherever situated, to it, the said party of the first part, belonging, or to which it may have any right, title, interest or demand whatever, in law or equity, to have and to hold, etc.,. . . . to the party hereto of the second part, its successors and assigns, forever; and the said party of the first part covenants to and with, etc.,. . . . ., and the said party hereto of the *Page 357 
second part unite herein for the purpose of assenting, contracting and agreeing to perfect and carry into execution the contract, agreement and consideration hereinbefore recited," etc.
The pleadings are very voluminous. The complaint demands judgment, that the deed of trust be decreed to be null and void; that an account be taken; that a perpetual injunction be granted; that the plaintiff have judgment for the money, the proceeds of the sale of shares of the capital stock of the plaintiff, for general relief, and for costs.
At the appearance term, the court granted an injunction, pending the action, until the final hearing thereof, restraining the defendant as to the deed of trust, etc., and, by consent of parties, it "further ordered that it be referred to John C. King, of the city of Baltimore, and State of Maryland, to take and state an account of the dealings and transactions
between the said plaintiff and defendant companies, and report the result thereof to the next term of this court; and this reference is made under The Code, with the right of each party to have issues arising on the pleadings tried by a jury."
Afterwards the referee named made his report, of which the following is a copy:
To the Honorable the Judge of the Superior Court of Davidson County,North Carolina:
The undersigned, John C. King, referee, would respectfully report: That under the order of this honorable court, passed in (450) the above-entitled cause, wherein I am directed to "take and state an account of the dealings and transactions between the said plaintiff and defendant companies, and report the result thereof to this court," I notified the respective parties plaintiff and defendant to appear at my office, at the city of Baltimore, and State of Maryland, on 18 August, A.D.1885, at which time and place the respective parties and their respective counsel did appear, and I proceeded, under the said "order," to hear the said parties, take the deposition of witnesses, who were first duly sworn according to law, to examine all vouchers produced, all books of accounts and documents and exhibits, and the stated account marked "X" and the stated account marked "Y," and I continued the proceedings, under said order, from day to day till the close of the same, 18 February, A.D. 1886, when the respective counsel of the parties, both plaintiff and defendants, were heard. I hereby return the court papers in the cause, the deposition of the witnesses, the books of accounts, the minute book, the cash book of the Silver Valley Mining Company, the cash book of the Baltimore Gold and Silver Mining and Smelting Company of Baltimore City, the stock, certificates and shares of the *Page 358 
Silver Valley Mining Company, the vouchers of the Silver Valley Mining Company, the "checks," the accounts "X" and "Y," and all other papers and accounts produced before me, and, in compliance with the said "order," report as follows:
As a matter of fact, there were no dealings between the plaintiff and defendant companies prior to 19 June, 1883, on which day a deed was executed, wherein the Baltimore Gold and Silver Mining and Smelting Company, of Baltimore City (a corporation chartered under the laws of Maryland), is grantor, and the Baltimore Gold and Silver Mining (451) and Smelting Company (a corporation chartered by the laws of North Carolina) is grantee, in which deed I find it recited, "that the said party of the second part assumes all the debts and obligations and liabilities of the party of the first part, so that the party of the second part shall succeed, to all intents and purposes, to the affairs, rights, interest and business of the party of the first part."
I find, that under the above assignment, the Baltimore Gold and Silver Mining and Smelting Company claim the sum of $53,010.17, with interest from 2 May, 1882, as a debt due by the Silver Valley Mining Company, the plaintiff in this case, for and on account of that money advanced by the Baltimore Gold and Silver Mining and Smelting Company of Baltimore City, to the said Silver Valley Mining Company, from 1 November, 1880, down to 2 April, 1882. (See account "X" and account "Y.") I find this to be the debt specified in the 9th paragraph of the plaintiff's bill and the last paragraph of the defendant's answer, and it purports to be a stated account between the Silver Valley Company and the Baltimore Company, grantor of the defendant.
I find that the books of the two companies, to wit, the cash book of the Silver Valley and the cash book of the Baltimore Company do not contain — either of them — the above accounts in the form as stated in the said accounts "X" and "Y"; I mean the said account is not extended on the books of either company.
I find that the Silver Valley Company was reorganized 8 January, 1879, and was controlled and managed from that date to 2 May, 1882, by Joseph Wilkins, president and treasurer, and Samuel Street and John M. McElroy, as directors, from 18 February, 1879, to 1 November, 1880. Jno. M. Dennison was treasurer of the same.
I find that during 1879, 1880, 1881 and 1882 the said Joseph (452) Wilkins was president and treasurer, and John M. McElroy and Samuel Street were directors of the Baltimore Company. The said Wilkins, McElroy and Street were a majority of the board of directors of both the said companies, and managed and controlled the business of both companies during the period indicated in the two preceding paragraphs. *Page 359 
I find the property and assets of the Silver Valley Company, on 5 August, 1879, consisted of its mining property situate in Davidson County, North Carolina, $570.20 in cash, and 154,010 shares of its capital stock, which had become forfeited to the company for non-payment of assessments levied thereon, which, at that date, was registered in the name of Joseph Wilkins, its president. I find in the treasury of said company 14 July, 1880, Wilkins treasurer, cash $421.20.
I find the property and assets of the Baltimore Company, 13 September, 1880, consisted of $200 in cash; a donation, hereinafter considered, of $5,000; a lease of land in Harford County; and a caveat for a patent, which I do not find to be of any definite value. Up to which date the said company credits itself with a purchase of land, $2,925. 1 January, 1881, I find cash $1,949.74; donation, hereinafter considered, $30,000; cash paid to that date, $20,093.63. At this date, 1 January, 1881, began to deal in Silver Valley Company's stock.
I find that account "X" begins 1 November, 1880, and closes 1 May, 1882; that account "Y" begins 16 December, 1880, and closes 11 July, 1882.
I find one entry in the cash book of the Silver Valley Company, to wit: "The Baltimore Gold and Silver Mining and Smelting Company, 22 April, 1882; amount received by the Silver Valley Company, from time to time, commencing from 1 November, 1880, to present date, $52,127.77." This entry was made about 11 July, 1882, after 22 April, 1882, when the books of both companies were (453) closed.
I find on the cash book of the Baltimore Company an entry: "Silver Valley Mining Company; 11 July, 1882, advanced the Silver Valley Mining Company, from time to time, to pay pay-rolls, wood, lumber, machinery and store, $53,606.35." I find these entries were made by the witness James McElroy, secretary. There are no other entries in the books of either company which embrace those items or accounts.
I find that the Silver Valley Company, during the running of the above accounts, expended over and above its cash receipts, the sum of $32,082.93; that Joseph Wilkins, during that time, to wit, from 1 November, 1880, to 22 April, 1882, was president and treasurer of said Silver Valley Company, and received its funds, and paid its current expenses. The vouchers of the said Silver Valley Company, under which the same were paid, are returned with this report.
I find that Joseph Wilkins was, during the running of the above account, president and treasurer of the Baltimore Gold and Silver *Page 360 
Mining and Smelting Company of Baltimore City, received its funds, and paid its current expenses from 18 October, 1878, the date of the deed of assignment, to 19 June, A.D. 1883.
I find that Joseph Wilkins kept the funds of the Baltimore Gold and Silver Mining and Smelting Company of Baltimore City, the funds of the Silver Valley Mining Company, his individual funds, a part of the time the funds of the North State Company — in one account; that he did not keep a treasurer's account; "that he did not keep a set of books; that he was not familiar with accounts"; that these funds were paid out from the same account indiscriminately, sometimes in cash, sometimes by checks, signed "Joseph Wilkins, treasurer," and sometimes (454) "Joseph Wilkins." Therefore I do not find in what proportions the common funds were distributed or paid out by the said Joseph Wilkins, either as funds of any of the said companies, or as his individual funds; nor can I find in what proportion or sums he received the same as treasurer of the said respective companies, or as his individual funds. I find that during the running of the said account from 10 January, A.D. 1881, to 1 April, 1882, The Baltimore Gold and Silver Mining and Smelting Company of Baltimore City dealt principally in Silver Valley Mining stock, purchasing 114,400 shares and selling 114,400 shares, from which I find it realized a profit of about $26,000. The ore account of the said Baltimore Gold and Silver Mining and Smelting Company of Baltimore City does not alter its cash account. It is charged on one side and credited on the other.
From the above sum of $26,000 must be drawn the salary of Joseph Wilkins, president, during the said term ($500 a month), and the sum of $8,420, paid for the land. It had no other funds that can be called "cash funds."
I find that the said Baltimore Gold and Silver Mining and Smelting Company of Baltimore City had not the funds to advance to the Silver Valley Company the sum of $32,082.93 and pay the further sum of $20,000 cash for ore, and that The Baltimore Gold and Silver Mining and Smelting Company of Baltimore City did not make the said advances, and did not pay the sum of $20,000, cash, for 2,000 tons of ore bought from the plaintiff at $10 per ton.
I find on the "cash book" of The Baltimore Gold and Silver Mining and Smelting Company of Baltimore City the following entries:
WORKING CAPITAL.
Gold and Silver Mining and Smelting Company.
18 April, 1880. Received donation from Joseph Wilkins ....... $ 5,000.00 *Page 361 
WORKING CAPITAL. (455)
16 Sept., 1880. Received donation from Joseph Wilkins ....... $25,000.00
WORKING CAPITAL.
16 Dec., 1880. Received donation from Joseph Wilkins ........ $10,000.00
The above donations and $200 for sale of capital stock were, and constituted at the said dates, the working capital of the said Baltimore Company of Baltimore City.
I find that no cash passed from the donor to the donee at the date of said entries; that the said donor was in the same position in relation to the donee, after, as before, the same were entered in the cash book; that the entries were made by the direction of the donor, who was, in a pecuniary view, unable to make such donations.
I find, as a matter of law, that the said donations and each of them were inoperative and void.
I find that on 6 May, A.D. 1882, a deed or agreement, under seal, was executed between the Silver Valley Company, defendant, and the Baltimore Company, plaintiff, which recites "that certain propositions had been made at a meeting of the stockholders of the party of the first part, for an ascertainment, security and settlement of the indebtedness by the party of the first part to the party of the second part, were submitted and accepted, and which were to be embodied in an agreement, to be duly executed by both of said companies, in consideration of which and five dollars, the amount of indebtedness of the Silver Valley Company to the Baltimore Company of Baltimore City shall be referred to the boards of directors of the respective companies for ascertainment, and if they cannot agree upon said amount, each company shall select one disinterested person, which two shall, before taking upon them the arbitration, choose an umpire, to determine all matters in dispute in case of their disagreement; and the decision as to the amount of (456) said indebtedness in all accounts, including the $20,000 alleged to have been paid or credited the Silver Valley Company for ore, under the contract of 10 January, A.D. 1881, shall be final and conclusive under both companies." It provides that the contract between the two companies, dated 10 January, 1881, shall be rescinded, and the "ore" on the property of the Baltimore Company of Baltimore City, under the said contract, shall be returned and be redelivered to the said Silver Valley Company, and that the sum of $20,000, the value of the said ore, shall be considered as part of the indebtedness of the Silver Valley Company, to the said party of the second part secured, to be paid as hereinafter mentioned. It provides that all vouchers and proofs for the establishment *Page 362 
of said indebtedness shall be submitted without delay, etc. In case the respective boards shall fail to agree upon the same, the arbitrators thereinbefore provided for shall be selected, and proofs, vouchers, books, etc., relating to said indebtedness shall be submitted to them for decision, according to the very right of the matter. It provides that when said indebtedness shall have been ascertained and determined, as aforesaid the deed of trust of record in Davidson County to be released and a deed of trust or mortgage shall be executed by the Silver Valley Company to the party of the second part, to secure the payment of the amount so ascertained to be due, payable in twenty-four months from 2 May, 1882. It provides that in the meantime a judgment confessed by the Silver Valley Company for $20,000 (the alleged ore debt) in favor of the Baltimore Company shall be stricken out. I find that under this agreement the board of the respective companies met on 5 or 6 of May, 1882, the vouchers of the Silver Valley Company were produced, and the cash book of the Silver Valley Company was also produced; the vouchers were compared with the entries in the (457) said cash book and authenticated as correct. I find that no vouchers of the Baltimore Company, nor cash book, or book of accounts, nor the accounts "X" or "Y," of the said Baltimore Company, were produced at that meeting by said Baltimore Company. I find that no vouchers or books of accounts of said Baltimore Company were then demanded or called for by the Silver Valley Company.
I find that the ore on the property of the Baltimore Company was returned, and the said judgment was stricken out, under the said agreement. I find that the return of this said ore released the Baltimore Company from any obligation to pay or account for the same. The Silver Valley Company, on the other hand, from whom the ore was purchased, would be bound to account for the purchase money of the ore to the Baltimore Company. I find no vouchers whatever for the payment of the purchase money of the said ore, and that the purchase money for the same ($20,000) was never paid in cash by the Baltimore Company to the Silver Valley Company. I find, on the credit side of the Silver Valley Company, the following entry: "Ore account, 22 April, 1882. Amount agreed upon to relinquish 2,000 tons of ore from Baltimore Company, purchased by it at sundry times, $20,000." I find there was no cash transaction. It was transferred from the agreement above recited.
I find that said agreement provides for the ascertainment, security and payment of any indebtedness due and owing from the Silver Valley Company to the Baltimore Company, and it is not conclusive of the amount of such indebtedness, nor does it estop either party from ascertaining what, if any, indebtedness may exist. *Page 363 
I find, as a matter of fact, that no debt was due and owing from the Silver Valley Company to the Baltimore Company on 19 June, 1883, the date of the deed of assignment from the said company to the defendant, and that the said deed did not operate as a transfer of any valid or subsisting debt from the Silver Valley Company to (458) the Baltimore Company.
As to the forfeited stock sold to John M. Dennison, I find that on 5 August, 1879, Joseph Wilkins, as president of the Silver Valley Company, entered into the contract with John M. Dennison, the then treasurer of the Silver Valley Company, which is set out on page 18 of the minute book of said company; and that of the forfeited stock in said contract mentioned, 60,000 shares were, on 10 January, 1881, given by Dennison to Wilkins in exchange for 60,000 shares of the stock of the Baltimore Company, and that Wilkins, on said day, gave said 60,000 shares of the complainant's stock to the Baltimore Company, without consideration, and that said last named company thereafter sold said 60,000 shares at the average price of $1.50 per share, and of the proceeds paid Joseph Wilkins $57,000, and retained the balance of $33,000 as profit.
I find that said Baltimore Company took said stock with notice of whence it came, and how it had been acquired, and of the fact that in the hands of Wilkins it was held in trust for complainant, and that complainant is entitled, as against the Baltimore Company, the defendant, as assignee of the same with notice, to the amount of $33,000, which the Baltimore Company retained, as profit, from the sale of said 60,000 shares of plaintiff's stock, less the sum of $15,000, which the plaintiff had received for the same from Dennison, which makes the sum due to the plaintiff from the defendant company, $18,000.
(Signed) JOHN C. KING, Referee.
In the course of the examination of the witnesses (whose testimony was taken in writing) and the reception of other evidence by the referee, the defendants made numerous exceptions, some based upon the ground, that the evidence was not competent, and others upon the ground, that competent evidence offered was not received. The plaintiff (459) filed one exception, and the defendants filed numerous exceptions, to the report of the referee; but they are not necessary to an understanding of the opinion of the Court.
At the trial term the parties agreed in writing, as follows: "It is agreed that this cause shall be tried before the court, without a jury, upon the evidence taken and returned by Hon. John C. King, referee, upon law and fact." *Page 364 
Before entering upon the merits of the action, the defendants moved to dismiss the action, because a corporation styled "The Baltimore Gold and Silver Mining and Smelting Company of Baltimore City (John M. Dennison, Samuel Street, John M. McElroy and Joseph Wilkins) were not made parties thereto." The court "denied the motion, the failure to join necessary parties being upon a ground of demurrer only, and the defendants excepted thereto."
At the trial before the court, the plaintiff proposed numerous issues of fact, which the court rejected, and it adopted the following, as raised by the pleadings, which were, in substance, proposed by the defendants, and responded to by it on the trial as indicated at the end of each:
1. Is plaintiff company indebted to defendant company, and in what amount? Answer: "No."
2. Is the deed of trust of 27 April, 1882, fraudulent and void, by reason of its having been procured in pursuance of a conspiracy upon the part of Wilkins, McElroy, Street and Dennison, to obtain all plaintiff's valuable property? Answer: "Yes."
3. Is plaintiff entitled to recover of this defendant any sum of money in consequence of the sale of plaintiff's stock to Dennison or Wilkins in 1879, alleged to have been sold in pursuance of said conspiracy to defraud, upon the part of said Wilkins, McElroy, Street and Dennison? Answer: "Yes," $18,000, with interest from 10 January, 1881.
(460) 4. Is defendant company a purchaser of said property from the Baltimore Company of "Baltimore City" for value, and without notice of any fraud committed in the procurement of the deed of trust? Answer: "No."
The case settled upon appeal states that, "upon consideration, all the exceptions (those to the report of the referee) were overruled, and the report confirmed. The findings of fact of the court are the same as the facts found by the referee, as appears in his report.
The issues were tried by the judge, jury trial having been waived, and judgment was rendered upon the confirmation of the report and findings of fact upon response to issues.
The court, among other things, adjudged and decreed, "that all of defendant's exceptions be overruled upon the findings of fact by the referee, the same being adopted as the findings of the court. Those exceptions, which are to the effect that the referee has exceeded the powers granted him in respect to the scope of the reference, are overruled because the whole case is now, by agreement, submitted to the court for trial without a jury, upon the evidence taken before the referee. The plaintiff's exception is also overruled, upon the facts found by the referee and adopted by the court." *Page 365 
It was further adjudged and decreed, that "the deed of trust mentioned is fraudulent and void, and that the defendants, the trustees therein named, be perpetually enjoined against executing the trusts therein provided; and that the plaintiff recover from the defendant corporation the sum of eighteen thousand dollars, with interest thereon from the tenth day of January, 1881, and for costs."
From this judgment both the plaintiff and defendant appealed to this Court.
The court refused to give judgment upon the facts found as to the sale of the shares of capital stock of the plaintiff in favor of the latter, for the sum of seventy-five thousand dollars and interest (461) thereon, and this it assigns as error.
The defendants assign thirty-four distinct grounds of error. Twenty-five of these have reference to exceptions to the referee's report, in various aspects of it, but, for reasons stated in the opinion of the court, these need not be repeated; those material are as follows:
"27th. The defendants further excepted to the ruling and judgment of his Honor, because he failed to render and file a statement of the facts found, and his conclusions of law thereon, separately.
28th. The defendant company also excepted to that much of the judgment as orders the payment of interest from the 10th day of January, 1881, as under no circumstances could any principal indebtedness have fallen due until some time thereafter.
29th. The defendants excepted to the finding in response to the third issue —
First. Upon the ground that by reason of a lack of statement of his Honor's findings of facts and law separately, it cannot be ascertained whether such response was predicated of a fraud in fact, or a construction; and if the latter, because there is no evidence of any constructive fraud.
Second. Because if such response was predicated of a fraud in fact, the finding is contrary to the weight of the testimony, and is erroneous.
Third. Because if his Honor did not intend to find actual fraud in this behalf, even if there was evidence of constructive fraud, the same is not alleged in the complaint, but it is framed diverso intuitu.
31st. The defendants excepted to the judgment, because it fails to pass upon the question of ratification and acquiescence in the sale of the stock to John M. Dennison.
33d. The defendants excepted to the failure of the court to pass upon the various exceptions taken by them to the admissibility of evidence before the referee, as well as for the adoption presumably (462) by the court of the rulings of the referee in this behalf, and *Page 366 
which are to be found in the testimony and exhibits, all of which form a part of this statement," etc.
The court states, in this connection, in the case settled on appeal, as follows:
"But no objection was made, upon the trial of the action, to the admission of any testimony before the referee, and the presiding judge was not called upon to pass upon any exceptions to evidence admitted by the referee."
The motion to dismiss the action, upon the ground that certain persons named had not been made parties to it, was properly disallowed. If the objection had been a valid one, taken properly, and in apt time, it came too late — just before entering upon the trial — to be insisted upon as of right. The statute (The Code, secs. 239, par. 4, 242, 243) provides, that the defendant may demur, when it appears, upon the face of the complaint, "that there is a defect of parties plaintiff or defendant," and that "when any of the matters enumerated as grounds of demurrer do not appear on the face of the complaint, the objection may be taken by answer," and further, that if the objection shall not be so taken, "the defendant shall be deemed to have waived the same, excepting only the objection to the jurisdiction of the court, and the objection that the complaint does not state facts sufficient to constitute a cause of action."
The objection was not taken by demurrer or answer, and so the defendants waived their right to take it at all. The court might, (463) for good cause shown, have allowed additional necessary parties to be made, and in some cases, it would, ex mero motu, require them to be made, but it seems that in this case it properly, as we shall see, did not deem them necessary. Lewis v. McNatt, 65 N.C. 63; Durham v.Bostick, 72 N.C. 353; Burns v. Ashworth, ibid., 496; Finley v. Hayes,81 N.C. 368; Lunn v. Shermer, 93 N.C. 164.
The objection that the referee exceeded the scope of his authority, under the order of reference, is without force. If it be granted that he did, in some respects (and we do not stop to see that this is so or not so), after he made his careful and elaborate report of the large volume of evidence taken before him, and his findings of fact and law, and the defendants had filed numerous exceptions to the same, it was expressly *Page 367 
agreed by the parties, "that this cause shall be tried before the court, without a jury, upon the evidence taken and returned by Hon. John C. King, referee, upon the law and facts." This was plainly a waiver of a trial by jury, as allowed by the statute (The Code, sec. 415), and placed the whole case before the court broadly upon its whole merits. Any inquiry as to the scope of the order of reference could not therefore serve any useful purpose. It was the province of the court to exclude from its consideration of the case, in any aspect of it, every thing immaterial and improper, and, in the absence of objection, it must be taken that it did so.
The assignment of error, in that the court failed to pass upon numerous exceptions to the admission of evidence objected to, and the refusal to admit other evidence offered by the defendants before the referee, cannot be sustained. It was agreed by the parties that the court should try the case "upon the evidence taken and returned by" the referee. There was no reservation in respect to it — the court was to receive and consider it as it was "taken and returned." Besides, such exceptions were not insisted upon on the trial, nor was the (464) court requested by the defendants to pass upon them. If they intended to insist upon them, they should have reserved the right in the stipulation to do so — at all events, in fairness they should have requested the court to decide the questions raised by them. It seems to us clear that they intended to waive them, and it must be held that they did so. It would savor of trifling, to do otherwise.
It is further assigned as error, that the court "failed to render and file a statement of facts found, and his conclusions of law thereon, separately." The statute (The Code, sec. 417), provides, that "upon the trial of a question of fact by the court, its decision shall be given in writing, and shall contain a statement of the facts found and the conclusions of law separately," etc., so that it may be seen to what statement of facts, and how, the court applied the law applicable arising upon them. The purpose is to have the facts of the case and the law, as applied, appear permanently, to the end that any proper motion or steps may be taken in the action to correct errors or irregularities, and likewise so that errors may be corrected here, in case the same shall be assigned and appeal taken to this Court. Clegg v. Soapstone Company, 66 N.C. 391;Foushee v. Pattershall, 67 N.C. 453; Straus v. Beardsley, 79 N.C. 59;Chastain v. Coward, ibid., 543.
The case settled on appeal states that the court found the facts, and it appears that it did, and much in detail, from the evidence taken and returned by the referee, which, by agreement, as we have seen, was the evidence in the case. It is true the court says that it found the facts as *Page 368 
the referee found them, and adopted his findings as those of the court. There is no reason why this might not be done. It was only important and necessary that the court should find and state the facts and its conclusions of law arising upon them, so that the whole might be distinctly seen. The material facts are found and stated — not very formally — and the conclusions of law are stated with such distinctness (465) as plainly to be seen. In addition to the general findings of fact, distinct issues of fact were drawn up, and the court responded to them severally. These issues, and the responses to them, were not inconsistent with the facts as found and stated, but in harmony with them, and though somewhat irregular and unusual, we cannot see that any harm grew or could grow out of them, to the prejudice of the parties. They served, and it seems they were intended, to give the leading constituent facts greater point and distinctness. The defendant cannot be heard to complain that such issues were acted upon, because they consented to and proposed them. We are of opinion, therefore, that the findings of fact and the conclusions of law appear with sufficient distinctness to serve every just and useful purpose, and substantially as the statute requires in such cases.
It is unnecessary to consider the numerous exceptions to the order of the court overruling the defendant's exceptions to the report of the referee, because under and in pursuance of the stipulation waiving a trial by jury, the whole case, upon its merits, was before the court, to be tried by it in all respects according to law. Accordingly it found the facts, and applied the law just as if there had been no reference and no report made by the referee. This appears from the record — the findings of the facts, the rulings, orders and final judgment of the court, and, as well, the nature of the matter. No doubt the report facilitated the labors and action of the court, but it was not bound or governed, so far as appears, by anything contained in it as such report. It cannot be taken that the court adopted the findings of facts by the referee without examination itself — it was its duty to scrutinize and consider the evidence, and to find the facts itself; and, the presumption is, it did so. That it found them to be just as the referee found them, is no valid objection; indeed, it goes to show the more strongly that the findings were correct.
The defendant's twenty-ninth exception, which applies to the (466) third issue submitted to the court, and its response to the same seem to us to be entirely groundless. The pleadings and the findings of fact suggest and give point to this third issue, and the issue itself, by its terms and purpose, plainly implies an inquiry as to positive fraud. The "conspiracy," referred to, is alleged, in the complaint, to be a combination to cheat and defraud the plaintiff, and the sale is alleged to *Page 369 
have been a positively fraudulent transaction, and this is denied in the answer, thus raising the issue.
Moreover, the general findings of the facts sufficiently raised any questions as to constructive fraud, and if the issue had reference to that, then it was nugatory. Besides, there was evidence and facts found, from which the court might find positive fraud. It is very certain that it did so in response to the issue.
Nor is the assignment of error, that the court failed "to pass upon the question of ratification and acquiescence in the sale of the stock to John M. Dennison," well founded. The defendants did not tender any issue, or request the court to make any special finding in that respect. They might have done so in apt time; as they did not, the omission was not error, of which he could complain after judgment. Kidder v. McIlhenny, 81 N.C. 132;Curtis v. Cash, 84 N.C. 42; Bryant v. Fisher, 85 N.C. 69; Simmons v.Mann, 92 N.C. 12; and cases there cited.
Besides, the defendant corporation had opportunity, and probably availed itself of it, to insist upon such alleged ratification and acquiescence, on the trial of the first issue submitted.
The learned counsel of the defendant, on the argument, laid much stress upon the suggested necessity of having Dennison, Street, McElroy and Wilkins before the court, as parties. They were not necessary parties — they were simply officers and agents of the plaintiff and the Maryland corporation, and no relief is asked as to them. It appears that Wilkins was, at first, made a party, and answered, but (467) afterwards, by consent, the action was abandoned as to him. These persons might have been examined, as witnesses for the plaintiff, or defendants; some, if not all of them, indeed, were examined for the defendants.
It was insisted, particularly, that the Maryland corporation was a necessary party, as it was alleged in the complaint, and the whole pleadings and the evidence went to show, that the deed of trust in question was made to secure a large debt, therein specified, due from the plaintiff to it, and also that it fraudulently got the shares of the capital stock mentioned, sold the same, and realized therefor the sum of ninety thousand dollars, etc. As to the deed of trust, the trustees therein, having the legal title to the land, are parties defendant, and make defense, and, in a measure and in an important sense, represent the cestui que trust. This corporation is a nonresident, and not within the jurisdiction of the court. Besides, it appears that its stockholders have dissolved and abandoned it, as far as they could do so, without a formal surrender of its charter — that it has assigned all of its property, rights, credits and *Page 370 
effects of every kind whatsoever, to the defendant corporation, and has, as far as it could, merged itself in the defendant corporation, which latter has assumed to represent it, and likewise all its liabilities. This fully appears from the deed of assignment, which the answer of the defendant corporation admits, and the answer so, in effect, declares. The defendant's trustees admit the facts so to be, and they say in their answer, that they have recognized the rights of their codefendant corporation, and have agreed with it, and intend, unless prevented, to execute the trust in its favor and for its benefit. Moreover, it appears that the stockholders of the defendant corporation are mainly, if not altogether, the stockholders of the Maryland corporation, and their stock in the latter corporation was transferred to and became the (468) stock of the defendant corporation. All this, in effect, appears from the answers of the defendants, and from the findings of fact, so that, so far as the defendants are concerned in this action, the defendant corporation represents and must be treated as the Maryland corporation. It has the latter's property, has assumed all its liabilities, and has agreed and assumed to stand in its place and stead, and it must be treated as so doing, for the purpose of the action. All the parties thereto, necessary to a determination of the action, are before the court.
The thirty-first exception, as to the time for which interest is allowed in the judgment, must be sustained. The plaintiff recovers money realized for the stock sold by the Maryland corporation. When it received the money, does not appear, but it certainly, as appears, did not get it or have it on 10 January, 1881, but after that time. It certainly had it before the time it executed the deed of assignment to the defendant corporation, which was 31 September, 1883. The judgment must, therefore, be so amended as to allow interest on the principal sum of money from that date, and the whole judgment, so amended, affirmed. To that end, let this opinion be certified to the Superior Court.
Modified and affirmed.
Cited: S. c., 101 N.C. 679; Morisey v. Swinson, 104 N.C. 561; Walkerv. Scott, 106 N.C. 62; Taylor v. Pope, ibid., 270; Kornegay v. SteamboatCo., 107 N.C. 117; Friedenwald v. Tobacco Co., 117 N.C. 557; Hocutt v.R. R., 124 N.C. 216; Howe v. Harper, 127 N.C. 357; Godwin v. Jernigan,174 N.C. 76; Lanier v. Pullman Co., N.C. 410. *Page 371 
(469)