The amended complaint was as follows:
"1. That on or about 20 January, 1892, The Asheville Tobacco Works, a corporation chartered and organized under the laws of the State of North Carolina, contracted in writing with the plaintiff, and so bound and obligated itself unto him, to purchase, and by said contract in writing did purchase, from the plaintiff one hundred and fifty thousand (150,000) `Asheville Air Tens' cigarette boxes, and eight hundred and fifty thousand (850,000) `Junaluska Tens' cigarette boxes, at the price of $1.33 per thousand boxes, and five hundred thousand (500,000) `Asheville Air Twenties' cigarette boxes, at $1.75 per thousand boxes, and in writing agreed, and so bound itself unto the plaintiff, to pay for said boxes, at the prices above set forth, within sixty days from their shipment.
"2. That thereafter, to-wit, on 25 February, 1892, the said The Asheville Tobacco Works contracted in writing with the plaintiff, and so bound and obligated itself unto him, to purchase, and by said contract in writing did purchase, from the plaintiff forty thousand pasteboard boxes, commercially known as packers or `cartons,' at the price of $24 per thousand boxes, and bound and obligated itself unto the plaintiff to pay for said `packers' or `cartons,' at the said price, within sixty days from the date of their shipment.
"3. That, as the plaintiff is informed and believes, on or about (546) 23 March, 1892, and after the dates herein before mentioned, the said The Asheville Tobacco Works, by resolution of and other actions of its stockholders and board of directors, transferred all of its assets of every kind and description, including its capital stock, which was $50,000, without any actual or bona fide consideration other than is hereinafter mentioned, to the defendant, The Asheville Tobacco Works and Cigarette Company, a corporation chartered and organized under the laws of the State of North Carolina on or about 22 March, 1892, and by further resolution or action of its stockholders and board of directors dissolved the said corporation, The Asheville Tobacco Works.
"That, as plaintiff is informed and believes, this action was taken for the purpose of merging the said The Asheville Tobacco Works into the defendant corporation, The Asheville Tobacco Works and Cigarette Company, and for the purpose of consolidating the two said corporations to enable them under the name of the defendant corporation to increase their capital stock and to engage in a wider range of business than permitted by the charter of The Asheville Tobacco Works. *Page 377 
"That, as plaintiff is informed and believes, in consideration of the transfer as set forth above in this paragraph, the defendant, The Asheville Tobacco Works and Cigarette Company, issued to the stockholders of The Asheville Tobacco Works two shares of stock of The Asheville Tobacco Works and Cigarette Company for each share of The Asheville Tobacco Works held by said stockholders, said shares of stock being in each corporation of the par value of $100 per share; and further, as plaintiff is informed and believes, the defendant, The Asheville Tobacco Works and Cigarette Company, agreed to and did assume the debts and liabilities of the said The Asheville Tobacco Works, including the debt and liability of the latter (547) to the plaintiff.
"That, as plaintiff is informed and believes, The Asheville Tobacco Works and Cigarette Company had at the time of said transfer the same officers and stockholders as The Asheville Tobacco Works had at the time of its dissolution; and said The Asheville Tobacco Works and Cigarette Company, as did also its stockholders and officers, had full and complete knowledge of all the debts and liabilities of The Asheville Tobacco Works, including the debt and liability of this plaintiff, and is therefore in law, as it is advised, under the circumstances of said transfer to it of the property of The Asheville Tobacco Works, bound for the payment of all debts and liabilities of The Asheville Tobacco Works, without the said The Asheville Tobacco Works and Cigarette Company formally having assumed the same.
"4. That just prior to and about the time of the said transfer stated in the preceding paragraph, the plaintiff was informed in writing by The Asheville Tobacco Works of the proposed change in the style of the corporation, and requested to alter the engravings on the cigarette boxes and packers, or `cartons,' so ordered as hereinbefore set forth, to correspond to the new name of the corporation, The Asheville Tobacco Works and Cigarette Company, and the plaintiff did make such requested alterations, for which it has charged the defendant the sum of fifteen dollars, which charge is reasonable and just.
"5. That thereafter, to-wit, on or about 21 April, 1892, the said plaintiff sold and delivered to the defendant a bill of merchandise consisting of five reams of wrapping paper, at the value of and at the agreed price of twelve dollars and fifty cents ($12.50), which sum said defendant agreed to pay to the plaintiff for said bill of merchandise (548) within sixty days from said date.
"6. That thereafter, to-wit, on or about 16 May, 1892, the said defendant contracted in writing with the plaintiff, and so bound and obligated itself unto it, to purchase, and by said contract in writing did *Page 378 
purchase, from the plaintiff five thousand (5,000) `Junaluska showcards,' or hangers, at the price of $210, and agreed, and so bound itself unto the plaintiff, to pay for said showcards within sixty days from the date of shipment.
"7. That between 21 April, 1892, and 21 July, 1892, the plaintiff shipped to the defendant, The Asheville Tobacco Works and Cigarette Company, the cigarette boxes, `cartons,' wrapping paper and showcards, or hangers, so ordered as hereinbefore set forth, all of which were duly received and accepted by said defendants. An itemized bill for said goods, wares and merchandise so shipped as aforesaid is hereto attached, marked `Exhibit A,' and is hereby made a part of this complaint. Said bill, including the charge for extra engraving, as set forth in paragraph 4, and the customary and proper charges for boxing and drayage, twenty-two dollars and fifteen cents ($22.15), amounts to thirty-three hundred and fifty-seven dollars and seventy-nine cents ($3,357.79), which sum was due and payable by the defendant to the plaintiff within sixty days from 16 June, 1892, which last-named date is the average date of the shipment of said goods, wares and merchandise so ordered and shipped as aforesaid.
"8. That no part of said sum has ever been paid, and the sum of $3,357.79, with interest thereon from 16 August, 1892, is now justly due and owing by defendant to the plaintiff."
(549) For a second cause of action, plaintiff alleges:
"1. That on 18 August, 1892, the defendant made and executed its promissory note in writing, in words and figures as follows:
"`$638.49. ASHEVILLE, N.C. 18 Aug., 1892.
"`Sixty days after date we promise to pay to the order of The Friedenwald Company six hundred thirty-eight and 49/100 dollars, at the Western Carolina Bank, Asheville, N.C. Value received, without interest.
"`Due 17-20 Oct. "`THE ASHEVILLE TOBACCO WORKS AND CIGARETTE COMPANY. "`F. A. HULL, Sec. and Treas.'
"Which said note was duly delivered by the defendant to the plaintiff, who is now the owner and holder of the same.
"2. That on said 18 August, 1892, the defendant made and executed its other promissory note in writing, in words and figures as follows:
"`$638.49. ASHEVILLE, N.C. 18 Aug., 1892.
"`Four months after date we promise to pay to the order of The Friedenwald Company, six hundred and thirty eight and 49/100 dollars, *Page 379 
at the Western Carolina Bank, Asheville, N.C. Value received, without interest.
 "`Due. "`THE ASHEVILLE TOBACCO WORKS AND CIGARETTE COMPANY. "`F. A. HULL, Sec. and Treas.'
"Which said note was duly delivered by the defendant to the plaintiff, who is now the owner and holder of the same.
"3. That on the said 18 August, 1892, the defendant made and executed its other promissory note in writing, in words and figures as follows:
"`$1,276.99. ASHEVILLE, N.C. 18 Aug., 1892.
"`Six months after date we promise to pay to the order of The Friedenwald Company, one thousand two hundred and seventy-six and 99/100 dollars, at the Western Carolina Bank, Asheville, N.C. Value received, without interest.
 "`THE ASHEVILLE TOBACCO WORKS AND CIGARETTE COMPANY.
"`F. A. HULL, Sec. and Treas.' (550)
"Which said note was duly delivered by the defendant to the plaintiff, who is now the owner and holder of the same.
"4. That said three notes described and set forth in the preceding three paragraphs, and aggregating $2,553.97, were credited on said account for $3,357.79, as set forth in said `Exhibit A,' leaving a balance due upon open account of $803.82.
"5. That said three notes were duly presented for payment on their respective dates of maturity at the Western Carolina Bank, Asheville, N.C. when payment was refused and the notes for $638.49 each, maturing respectively 21 October, 1892, and 21 December, 1892, were protested for nonpayment, at a cost of four dollars ($4) to the plaintiff.
"6. That no part of either of said three notes has ever been paid, but they are still justly due and owing from the defendant to the plaintiff, with interest from their respective dates of maturity until paid, and protest fees, $4.
"Wherefore the plaintiff demands judgment against the defendant for the sum of $3,357.79, with interest from the times when the component parts of said sums respectively became due, together with four dollars protest fees and the cost of this action, to be taxed by the clerk of this court. *Page 380 
(551) The defendant's demurrer was as follows:
"The defendant demurs to the complaint styled `Amended complaint,' filed herein on 14 February, 1894, and for causes of demurrer alleges:
"1. That there is a defect of parties defendant in the omission of the corporation named in the first paragraph of said `Amended complaint,' to-wit, The Asheville Tobacco Works.
"If the said The Asheville Tobacco Works was dissolved and its charter in any manner annulled on or about 23 March, 1892, as alleged in the third paragraph of said `amended complaint,' said corporation in nevertheless still a corporation by force of the provisions of section six hundred and sixty-seven (667) of The Code of North Carolina, and a necessary party to the first cause of action alleged in said `amended complaint.'
"2. That several causes of action have been improperly united. In paragraphs one to four, inclusive, of the first part of said `amended complaint' the plaintiff has alleged certain contracts, promises and agreements between The Asheville Tobacco Works and himself, but has not, in any one of said paragraphs, or elsewhere in said `amended complaint,' alleged with respect to any of said contracts, promises and agreements that the defendant was in privity with the plaintiff, or that the defendant had at any time, upon any consideration whatever, in any manner whatever, made to the plaintiff a promise to assume in any manner or in anywise to become liable or answerable to the plaintiff for or upon any of said contracts, promises and agreements between said The Asheville Tobacco Works and said plaintiff.
"In paragraph five of said first part (or cause of action) of said `amended complaint' the plaintiff alleges a cause of action against the defendant, to-wit: That plaintiff sold and delivered to defendant (552) a bill of merchandise; and in paragraph six of said `amended complaint,' and also in paragraph seven thereof, the plaintiff alleges causes of action against this defendant, as in said paragraphs appear.
"That said causes of action alleged in paragraphs one to four, inclusive, of said first part of said `amended complaint,' in so far as they affect this defendant, if they affect it at all, are not, nor is either of them, founded on contract and are not in form ex contractu as regards the defendant, but lie in tort and are improperly united with the causes of action stated in said fifth, sixth and seventh paragraphs of said first part of said `amended complaint,' and the causes of action stated in said fifth, sixth and seventh paragraphs are improperly united with the causes of action stated in said paragraphs one to four, inclusive. *Page 381 
"3. That said complaint, in respect of the causes of action set forth in paragraphs one to four, inclusive, of the first part of said `amended complaint,' does not state facts sufficient to constitute a cause of action.
"The first and second of said paragraphs allege contracts between the plaintiff and The Asheville Tobacco Works.
"The third of said paragraphs alleges that The Asheville Tobacco Works transferred all its assets, etc., to the defendant; and by resolution, etc., `dissolved the said corporation, The Asheville Tobacco Works, and that the defendant agreed to and did assume the debts and liabilities of the said Asheville Tobacco Works, including the debt or liability of the latter to this plaintiff, and is therefore in law, as he is advised, under the circumstances of said transfer to it [the defendant] of the property and assets of the Asheville Tobacco Works, bound for the payment of all the debts and liabilities of The Asheville Tobacco Works, without the said The Asheville Tobacco Works and Cigarette Company formally having assumed the same.' (553)
"It appears upon the face of the complaint that The Asheville Tobacco Works is and has ever since its creation been a corporation; that it has not been dissolved or annulled in any manner allowed by law. It is not alleged in the complaint that the plaintiff was ever in any manner notified by The Asheville Tobacco Works, or by the defendant, or by any other person or corporation, that the defendant had `agreed to and did assume the debts and liabilities of the said The Asheville Tobacco Works, including the debt and liability of the latter to this plaintiff.' It is simply alleged that the plaintiff `is informed and believes such to be the fact.' It is not alleged by the plaintiff in his complaint that he ever gave the defendant notice that he accepted it as his debtor in respect of the said debts and liabilities of the said The Asheville Tobacco Works to him, and he could have no cause of action against said defendant in respect of said debts and liabilities until he gave him such notice. If filing this `amended complaint' might be regarded as such notice, then no such notice was given defendant until long after this action was begun, as appears upon the face of the complaint, or `amended complaint,' and as such causes of action did not exist at the commencement of this action, they cannot be maintained. There is no allegation in the complaint, or `amended complaint,' of any express promise or agreement by defendant to the plaintiff that the plaintiff should be paid by defendant any debt or liability due to him from The Asheville Tobacco Works, nor are there any facts alleged in said `amended complaint' from which any such promise or agreement can be implied or inferred. *Page 382 
"It is not alleged in said `amended complaint' that the plaintiff had done anything whereby the Asheville Tobacco Works became discharged (554) from or ceased to be liable to the plaintiff for said debts and liabilities of the said The Asheville Tobacco Works to the plaintiff, nor is there any averment whereby it can be seen how it is possible for the defendant and the said The Asheville Tobacco Works to the be jointly and severally liable to the plaintiff for said alleged debt. It will be necessary for the plaintiff to establish his debt against the said The Asheville Tobacco Works before he can have any right to call upon the defendant to apply any assets it holds of the said The Asheville Tobacco Works to the satisfaction of said debt."
A corporation chartered and doing business in the corporate name of The Asheville Tobacco Works became, about 23 March, 1892, completely merged, by a transfer of all its property, rights and franchises, into a new company incorporated and organized by the same stockholders and directors as the Asheville Tobacco Works and Cigarette Company, the shareholders of the former company receiving two shares of stock in the new in lieu of every one previously held in the old corporation. The new organization continued the business and adopted the contracts already made by its predecessor, including that for the material for which the debts sued on was created. The effect of such a merger was to create a novation, so far as the creditors of the old company were concerned, and to substitute the new one as debtor for it. 2 Cook on S. S., sec. 669, note 3; 1 Spelling on Pr. Corp., sec. 93. As the nature and objects of the old were substantially the same as those of the new association and the latter was organized merely for the purpose of (555) enlarging its business, it was not necessary to obtain the consent of the creditors of the former to the change, since their rights continued after such a merger or consolidation the same as against the new as against the old corporation, before any transfer of stock or property was made. 2 Morawitz Pr. Corp., sec. 811. Changes of this kind are to be distinguished from the reorganization of insolvent corporations, which is provided for by statute in some of the States. 2 Beach Pr. Corp., sec. 791.
The new corporation being formed by the same stockholders and managed by the same officers that composed and governed its predecessor, the adjudications to which we have adverted, and which permit such mergers without the assent of creditors, rest upon the idea that the old association under a new name is, by virtue of an implied agreement, *Page 383 
the debtor under the same contracts and in the same amounts as if no change had been made. With the knowledge that the law makes them answerable for all such outstanding indebtedness, it is difficult to understand why the same officers and persons acting under a new name should be surprised when sued for debts created by them, and should not be able to understand and make defense to the claims of indebtedness without a recitation by the pleader of the history of their conduct of the business. Besides the stipulation which the law would imply to pay the debts of the old concern, the new association after its organization, as is alleged both in the amended complaint and the two first filed, made an express promise to assume the indebtedness for which the two actions were brought, and if that be true the transfer of the property was a sufficient consideration to support such a promise.
The plaintiff had at first instituted two actions in the Superior Court of Buncombe, by summons dated respectively 23 October and 24 October, 1892, and the two were subsequently consolidated by (556) order of the court. In the complaints first filed in each of the distinct actions the plaintiff had in general terms alleged an indebtedness on the part of the new corporation growing out of the contracts made by the old. After the consolidation, and after a trial and verdict, which was set aside by the presiding Judge, an order was made in the court below allowing plaintiff to file the amended complaint, in which there is a recital of the history of the merger. Was such a complaint amenable to the objection that it set up a new cause of action? We think not. The theory that underlay both of the original declarations was that the association last formed stood in the place of its predecessor and made the former liable for all of the outstanding debts. If we should conclude that the new allegations were essential to the maintenance of the action, not, as contended by the plaintiff, a mere recital of evidential facts, it is nevertheless clear that the cause of action was the same whether defectively or sufficiently stated. We think that the order allowing the plaintiff thirty days to amend warranted the substitution of the amended complaint for the two theretofore filed, and that it set forth more fully the cause of action originally relied on in both actions, but stated no new cause.
If it be true that the plaintiff could, by virtue of the provisions of section 685 of The Code, have attached some conveyance made by the original corporation to that in which it was merged within sixty days after its execution, it does not appear that any such steps were taken. The charter of the first corporation was not annulled, nor did it expire, but its existence was merged into a new one. Hence the statute referred to in the demurrer (The Code, section 667) has no bearing upon the question before us. *Page 384 
The objection that two causes of action, the one arising out of tort and the other out of contract, have been improperly joined, is (557) untenable. The new organization, as we have seen, was effected merely to enable the same persons, with the same and possibly a little additional capital, to enlarge the business. The law treats the new organization, if formed as alleged in the complaint and admitted by the demurrer, as to all intents and purposes the same body, still answerable for its own contracts made under a different name. If the old company has ceased to exist and been merged in the new, it has no separate entity, is not liable to be dissolved, and cannot be made a party to the action.
The only question presented by the appeal is whether there was error in overruling the demurrer. If the objection to the validity of a part of the contract declared upon could be drawn in question by demurrer ore tenus, and if it were well taken, the fact would still remain that a part of the demand is predicted upon a different contract. But we do not understand that the action was brought to enforce an executory contract, and if not, the objection is without merit, or at all events the defendant could avail itself of the statute, if at all, only by plea, as in the case of the statute of limitations, and not by demurrer. Curtis v. Piedmont Co.,109 N.C. 401; Cozart v. Land Co., 113 N.C. 294; Roberts v. WoodworkingCo., 111, N.C. 432.
The action is against the corporation and founded upon the identity of the two bodies, but if it had been alleged that the defendant had perpetrated a fraud, it would not have followed that its officers were necessary parties. Mining Co. v. Mining Co., 99 N.C. 445.
It seems to us, after a careful consideration of the grounds specified in the demurrer, that there was no error in overruling it. The judgment is
Affirmed.
Cited: Bank v. Hollingsworth, 135 N.C. 579; Grocery Co. v. ExpressCo., 178 N.C. 324. *Page 385 
(558)